Opinion of the Court.
THIS was an ejectment, brought by the appellant in the court below, to recover the possession of a tract of land of 60,000 acres, patented in the name of Philip Barbour. After the evidence was gone through, on the trial in that court, the jury were instructed by the Court, that if they believed the land embraced by the patent of 60,000 acres in the name of Barbour, had not been listed for taxation, according to the requisitions of the laws of this state, the title was forfeited to the commonwealth, and the title thereof and the right of entry was thereby divested out of Barbour ; and that, without an inquest of office, the certificate of the auditor, showing the land had not been entered for taxation, was sufficient to show that the lessors had no title.
Whether or not the court was correct in its instructions to the jury, is the only question made in argument, and is the only one to which the attention of this court need be directed, in revising the judgment rendered against the appellant. The solution of the question turns on the import of the statute of this country, of December 1801, 2 Litt. 463. § 5. That section provides, “Any person (infants and persons non compos mentis excepted) claiming lands in this state, and failing to list the same for taxation, in the case of a resident, whenever legally called on by a commissioner of the tax; and in the case of a non-resident, with the auditor on or before the first day of October next shall, for and in consequence of such failure, forfeit his or her claim to the commonwealth : Provided, however, that such forfeiture shall not affect or invalidate the title of any other person, who may have a legal and different claim to the same land, who shall list and pay the tax due thereon, agreeable to law ; but the claim or title of such person or persons shall be and remain as valid and secure, as if the claim which has been forfeited, in consequence of the land not being listed, had never existed.”
If, by the operation of this statute, the title to lands is divested out of non-residents, immediately on a failure to comply with its requisitions, in entering them for taxation, the instructions of the court below are correct; but if, before the title vests in the commonwealth, the failure to enter the lands for taxation *61 should be ascertained by an office of inquisition, then, as no such inquisition appears to have been taken as to the land patented to Barbour, the instructions of the court cannot be sustained.
That there must be an office of inquisition, before the title vests in the commonwealth, will be apparent, if those rules of construction be applied, which have invariably governed the English courts, in expounding their acts of parliament declaring forfeitures to the king. Thus it has been held, where a man is attainted by parliament, and it is thereby ordained that all his lands shall be forfeited, and it is not said that they shall be in the king without office, there they shall not be in the seizin of the king, to grant over, without office; for it does not appear of record what lands they are.—Broke, title Office, cited and recognized in 2 Plowden 486, and 3 Coke Rep. 10. And, whilst speaking on the subject of inquests of office, Blackstone, in the third volume of his Commentaries, observes, “ these inquests of office were devised by law, as an authentic means to give the king his right, by solemn matter of record ; without which, he, in general, can neither take nor part from any thing.” And the reason assigned is, that it is a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon, or seize any man’s possession, upon bare surmises, without the intervention of a jury.
Other authorities, to the like import might be cited ; but these are sufficient to show that, in general, the king can take nothing but by matter of record, and that there must be an inquest of office, to entitle him to forfeited lands, unless the statute declaring the forfeiture, declares the title to be in him without office. If, therefore, those rules to which we have adverted, are to have any influence on the construction of the statute of this country, it is obvious, that, before office found, the commonwealth cannot be vested with the title to lands not entered for taxation ; for the statute barely declares that the person failing to enter his lands, shall forfeit his claim to the commonwealth, without containing any expressions from which it can be inferred that the legislature intended to dispense with the inquest of office. It is true, in the proviso to the statute, there is not only a saving of the statute as *62 to the rights of others, but it is declared also, that such rights shall be and remain as valid and secure, as if the claim which has been forfeited had never existed; but that proviso, we apprehend, ought not to induce a construction more unfavorable to the forfeited claim than would have been proper without it. Under that proviso, it would, no doubt, be impracticable for a purchaser of the forfeited claim, after office found, to overreach an adverse title, derived from the commonwealth, junior in date to that which had been forfeited, and which existed at the time of forfeiture; but as, without the proviso, the commonwealth could not be vested with the forfeited title, without office, so, under the proviso, those having adverse titles ought not to be allowed to set up the forfeiture, to protect their title, until, by inquest of office, the title is divested out of the person failing to enter it for taxation.
And with respect to the application of those rules of construction to the statutes of this country, we are utterly unable to perceive any solid objection. The king, in his political character, is nothing more nor less than policy and government, constituted for the direction of the people ; and by the change of government produced by the revolution, the commonwealth, of necessity, has succeeded to that political character. There is an obvious propriety, therefore, in ascertaining the rights and remedies of the commonwealth, in the general, by the standard of the common law, as respects the political character of the king, where the same are not varied by the terms of the constitution or some statutory provision.
It results, that the instructions given by the court below, are erroneous; and consequently, the judgment must be reversed with costs, and the cause remanded to that court, for further proceedings, not inconsistent with this opinion.